UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JACK A. JAMES,

          Plaintiff,

     v.                                   Civil No. 07-6350-HA

                                               OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

HAGGERTY, Chief Judge:

     Plaintiff Jack A. James seeks judicial review of a final decision by the Commissioner of

the Social Security Administration denying his application for Disability Insurance Benefits

(DIB).  This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g).  For the following reasons, the Commissioner's decision is reversed and remanded for

further proceedings.

**<u>STANDARDS</u>**

1- OPINION AND ORDER

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

2- OPINION AND ORDER

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

3- OPINION AND ORDER

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

4- OPINION AND ORDER

**FACTS**

The relevant facts, which are drawn from the extensive administrative record and the ALJ's decision, are summarized here.  Plaintiff was forty-one years old at the alleged disability onset date and forty-three years old at the time of his hearing.  Plaintiff has a high school education and has taken some college courses.  Plaintiff has past relevant work experience in the United States Navy, as a material handler, able-bodied seaman, botswain, and as an airline security representative.

Plaintiff protectively filed a prior application for DIB on November 28, 2003, alleging disability beginning December 31, 2002.  Tr. 16.[1]  This application was denied initially and on reconsideration.  An ALJ conducted a hearing on January 7, 2005, at which he heard testimony from plaintiff, who was represented by counsel, and a vocational expert (VE).   On March 22, 2005, the ALJ issued a decision denying benefits.  Tr. 16.  The Appeals council denied review and the decision was not further appealed.  Tr. 16.

Plaintiff protectively filed the current application for benefits on March 24, 2005, alleging disability beginning December 31, 2002.  Tr. 16.  At his hearing, plaintiff amended his application to allege disability beginning March 23, 2005.  Tr. 16.  Plaintiff alleges disability stemming from physical and mental impairments including chronic migraine headaches, sleep apnea, anxiety, and depression.  Plaintiff's application was denied initially and on reconsideration.  A second ALJ conducted a hearing on May 18, 2007, at which he heard testimony from plaintiff, who was represented by counsel.  A VE was present at the hearing but was not called on to testify.

---

[1] Tr. refers to the Transcript of the Administrative Record.

On July 23, 2007, the ALJ issued a decision finding plaintiff not disabled as defined in the Social Security Act. The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Plaintiff subsequently initiated this action.

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date. Tr. 18, Finding 2.

At step two, the ALJ found that plaintiff had the following medically determinable severe impairment: chronic headaches. Tr. 18, Finding 3. The ALJ also determined that plaintiff has a history of several other impairments including sleep apnea, depression, and panic attacks. Tr. 20.

At step three, the ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal the requirements of any listed impairment. Tr. 22, Finding 4.

The ALJ adopted the RFC from plaintiff's first hearing and determined that plaintiff has the RFC to perform a full range of work at all exertional levels. The ALJ determined that plaintiff is limited in his ability to climb stairs, balance, stoop, and crawl. He also found that plaintiff is able to "understand, remember and carry out simple instructions under normal supervision on a sustained basis, but not with detailed or complex instructions or tasks." Tr. 22, Finding 5.

At step four, the ALJ found that plaintiff was incapable of performing his past relevant work. Tr. 27, Finding 6.

At step five, the ALJ, found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform.

6- OPINION AND ORDER

**DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits due to a number of alleged errors including: (1) relying on VE testimony regarding plaintiff's employability that deviated from plaintiff's RFC, (2) failing to find plaintiff's depression and anxiety to be severe impairments, and (3) failing to include plaintiff's photo-sensitivity in plaintiff's RFC.

**1.       VE Testimony**

Plaintiff argues that there are discrepancies between the findings regarding plaintiff's RFC and the occupations identified by the VE.  In his consideration of plaintiff's current application for DIB, the ALJ adopted the RFC established by the ALJ in plaintiff's original application for DIB.  Because the ALJ adopted the RFC from the first hearing, he did not question a VE during the second hearing, but relied on the VE testimony from plaintiff's first hearing.

Relying on the VE testimony from plaintiff's first hearing, the ALJ found that plaintiff could work as a touch-up screener/printed circuit assembler, small products assembler, and cafeteria helper.  Tr. 28-29.  These jobs are each listed in the Dictionary of Occupational Titles (DOT) as requiring Level Two reasoning abilities.  According to Appendix C of the DOT, Level Two reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  However, the ALJ found that plaintiff only had the RFC to "understand, remember and carry out simple instructions under normal supervision on a sustained basis, but not with detailed or complex instructions or tasks."  Tr. 22.  A job requiring Level Two reasoning exceeds plaintiff's functional capacity to deal with detailed tasks.

The DOT is the "best source for how a job is generally performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). The ALJ "may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995). The VE's testimony deviated from the ALJ's findings regarding plaintiff's RFC. Such a deviation would only be acceptable had the ALJ questioned the VE regarding the deviation and then provided persuasive evidence to support the finding that plaintiff could perform those jobs despite their Level Two reasoning level. However, the VE's testimony went by without comment, and the record contains no justification for why plaintiff is capable of performing these jobs despite his RFC. Accordingly, the ALJ was not justified in relying on the VE's testimony in making his finding at step five.

**2.     Plaintiff's Mental Impairments**

Plaintiff argues that the ALJ improperly considered the medical evidence and should have found plaintiff's depression and anxiety to be severe impairments. Plaintiff's psychological impairments are well documented in the administrative record. At particular issue in this case are three assessments of plaintiff's Global Assessment of Functioning (GAF). The GAF scale is used to rate the psychological, social, and occupational functioning of a patient. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). The GAF scale does not account for limitations in functioning from physical impairments such as plaintiff's headaches. A GAF score between 41 and 50 indicates serious symptoms such as suicidal ideation or a "serious impairment in social, occupational, or school functioning." Tr. 984.

Plaintiff was assessed as having a GAF between 41 and 50 by three different clinicians. On November 17, 2003, Miles Hohenegger, Ph.D., diagnosed plaintiff as having a GAF of 50.

8- OPINION AND ORDER

Tr. 939.  On June 22, 2005, Gale Smolen, M.D., diagnosed plaintiff as having a major depressive disorder, moderate, with anxiety.  Tr. 826.  Doctor Smolen diagnosed plaintiff as having a GAF of 50.  *Id.*  Doctor Smolen stated that even with his mental impairments, plaintiff "would be able to remember and understand with mild impairment and concentrate and attend with no impairment." *Id.*  However, Dr. Smolen qualified this statement by noting that "he would be able to relate to people as long as he is feeling well." *Id.*  Finally, on October 3, 2005, Michael Meyers, Ph.D., diagnosed plaintiff as having a GAF of 45 and a major depressive disorder.

The opinions of medical experts cannot be lightly disregarded.  However, "it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).  An ALJ must give weight not only to the expert's clinical findings and interpretation of test results, but also to their subjective judgments.  *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

9- OPINION AND ORDER

The ALJ rejected the opinions of the three medical experts discussed above with respect to the GAF scores.  In discussing Dr. Smolen's assessment, the ALJ accepted his opinion that plaintiff's mental impairments would only have mild limitations on his ability to remember and understand, no limitation in his ability to concentrate, and "no significant limitation in his ability to relate to others."  Tr. 20.  However, the ALJ ignored Dr. Smolen's qualification that plaintiff would only be able to relate to others "as long as he is feeling well."  Tr. 939.  The ALJ gave little weight to Dr. Smolen's GAF assessment.  *Id.*  The ALJ reasoned that Dr. Smolen's conclusions with respect to plaintiff's functioning were inconsistent with a GAF score of 50, which indicates serious impairment in social and occupational functioning.  *Id.*  This court notes that Dr. Smolen's assessment of plaintiff's functional limitations and GAF score are only inconsistent if the qualification that plaintiff can only relate to others when he is feeling well is ignored.

The ALJ rejected Dr. Meyer's assessment that plaintiff has a GAF of 45 because that opinion "is inconsistent with the report of Dr. Smolen that the claimant's mental impairment resulted in only mild functional limitations."  Tr. 21.  The ALJ also noted that Dr. Meyers' treatment of plaintiff was "of relatively short duration."  *Id.*  Doctor Meyers treated plaintiff from September 22, 2005, to February 10, 2006.  *Id.*  As discussed above, a GAF between 41 and 50 is not inconsistent with Dr. Smolen's report when considered in its entirety.  Moreover, it seems that four and a half months would provide more than ample time for a medical expert to make an accurate GAF assessment.

The ALJ did not explicitly reject Dr. Hohenegger's opinion but seemed to suggest that the GAF of 50 was the result of outside stressors in plaintiff's life, rather than from an ongoing

10- OPINION AND ORDER

psychological impairment, and as such the assessment should be discounted. Tr. 20. The ALJ concluded that plaintiff's "medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in his ability to perform basic mental work activities and are therefore nonsevere." Tr. 21. The ALJ's reasons for rejecting the GAF assessments of three medical experts are unpersuasive. The ALJ did not provide clear and convincing explanations for rejecting these uncontroverted expert opinions. While it is possible that one medical expert made a mistake in assessing plaintiff's mental impairments and GAF, it strains credulity to find that all three experts were mistaken. This court finds that plaintiff has satisfied his burden of establishing that he has a severe mental impairment.

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. Pursuant to this remand, the ALJ shall reformulate plaintiff's RFC in light of his severe mental impairment. The ALJ shall also consult with a VE regarding the new RFC and determine whether there are jobs plaintiff can perform in light of his RFC, age, education, and work experience. Plaintiff shall have the opportunity to submit additional evidence regarding his alleged photo-sensitivity.

11- OPINION AND ORDER

**CONCLUSION**

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C.

§ 405(g), the decision of the Commissioner must be REVERSED and REMANDED FOR

FURTHER PROCEEDINGS consistent with this Order and the parameters provided herein.

IT IS SO ORDERED.

DATED this    14    day of November, 2008.


        /s/ Ancer L. Haggerty
        Ancer L. Haggerty
        United States District Judge

12- OPINION AND ORDER